**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert Michael STANDARD,
Defendant–Appellant.**

No. 98–50632.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 6, 1999

Decided March 29, 2000

Robert M. Standard, pro se, Los Angeles, California, for the defendant-appellant.

Alka Sagar and Julie Werner–Simon, Assistant United States Attorneys, Los Angeles, California, for the plaintiff-appellee.

Before: D.W. NELSON, BEEZER, and T.G. NELSON, Circuit Judges.

BEEZER, Circuit Judge:

Robert Michael Standard was convicted of, inter alia, subscribing to a false tax return. In this, his third appeal, he challenges the district court's computation of the base offense level for his tax conviction. The district court relied on the presentence report's statement that Standard improperly deducted more than $1.7 million on his 1988 tax return. Standard objected to this statement as factually and legally incorrect. We have jurisdiction pursuant to 28 U.S.C. § 1291. Because the district court failed to resolve this controverted matter in accordance with Federal Rule of Criminal Procedure 32(c)(1), we vacate Standard's sentence and remand for re-sentencing.

I

Standard is a former personal injury lawyer who obtained many of his clients by paying third-party non-lawyers for referrals. In his 1988 federal tax return, Standard deducted $1,794,495 in referral fees from his gross income by listing these payments as "other expenses." The federal government commenced a criminal investigation regarding the propriety of Standard's tax deductions.[1]

1. The State Bar of California also investigated Standard for misappropriating client funds, misusing his trust account, and improperly soliciting business. As a result of that investigation, Standard left his law firm and resigned from the bar.

In 1994, a federal grand jury indicted Standard on two counts of subscribing to a false tax return. Standard was also indicted on two counts of making false statements on bank loan applications, and one count of bankruptcy fraud based on concealment of an asset. A jury subsequently convicted him on all five counts. In February 1995, Standard was sentenced to a total of 65 months in custody, to be followed by a three-year term of supervised release. Standard appealed, challenging both his convictions and his sentence. On April 26, 1996, we reversed Standard's convictions on three counts, but affirmed his 1988 tax conviction and his conviction for bankruptcy fraud. *See United States v. Standard,* No. 95–50069, 1996 WL 207157 (9th Cir.1996). Because we found it necessary to remand for re-sentencing, we did not consider Standard's challenge to his sentence. *See id.*

On July 3, 1996, Standard was re-sentenced to a 60–month term of imprisonment, and a three-year term of supervised release. In determining Standard's sentence, the district court applied the 1992 Sentencing Guidelines, which were in effect at the time the latest of Standard's two offenses occurred.

Standard appealed his new sentence. On December 24, 1997, we held that the district court's use of the 1992 Guidelines to determine Standard's sentence for the 1988 tax offense violated the Ex Post Facto Clause of the Constitution. *See United States v. Standard,* No. 96–50407, 1997 WL 812248 (9th Cir.1997). We again remanded for re-sentencing. *See id.*

On August 24, 1998, Standard was sentenced for the third time. This time, the district court applied the 1988 Guidelines and sentenced Standard to a 51–month term of imprisonment, plus a three-year term of supervised release. Standard filed the instant appeal on August 27, 1998. Standard argues, as he did in his first and second appeals, that the district court erred by not determining what portion of the $1.7 million deduction was improper. Although Standard was released from fed-eral custody on November 16, 1998, he remains subject to the conditions and terms of supervised release.

## II

■ The sole issue raised by Standard in this appeal is whether the district court erred in calculating the base offense level for his tax fraud conviction. We review de novo the district court's interpretation and application of the Sentencing Guidelines. *See United States v. Barnes,* 125 F.3d 1287, 1290 (9th Cir.1997). Under § 2T1.3(a) of the 1988 Guidelines, the base offense level for tax fraud is either 6, or a higher number that corresponds to the tax loss. *See* U.S.S.G. § 2T1.3(a) (1988). The Guidelines compute the tax loss as 28% of the amount by which the gross income was understated. *See id.* Thus, because Standard's 1988 tax return deducted $1,794,495 in referral payments from his gross income, the district court calculated the tax loss as 28% of that amount, or $502,459. Under the 1988 Guidelines, a base offense level of 15 corresponds to a tax loss of $502,459. *See* U.S.S.G. § 2T4.1.

Standard contends that the district court should not have used the $1,794,495 deduction to compute the tax loss because the government never proved that this entire amount was improperly deducted. Under § 162 of the Internal Revenue Code:

> No deduction shall be allowed ... for any payment ... made, directly or indirectly, to any person, if the payment constitutes an illegal bribe, illegal kickback, or other illegal payment ... under any law of a State (but only if such State law is generally enforced), which subjects the payor to a criminal penalty or the loss of license or privilege to engage in a trade or business.

26 U.S.C. § 162(c)(2). Thus, a payment may be deducted if it is not illegal under state law.

We determined in Standard's first appeal that payments for solicited referrals are illegal under California law. Although

Standard concedes that some of the payments that he deducted were for outright solicited referrals, he avers that others were for unsolicited referrals. He argues, moreover, that because California law in 1988 did not prohibit payments for unsolicited referrals, the district court was obligated to determine what portion of the $1.7 million deduction was illegal. According to Standard, only the portion that was improperly deducted may be used to determine the tax loss. Before considering the merits of Standard's contentions, we first dispose of the government's law of the case argument.

a.

■ The government contends that we, either expressly or necessarily by implication, considered and rejected Standard's tax loss argument. The government first argues that because we did not explicitly instruct the district court in Standard's second appeal to recalculate the tax loss on remand, the calculation must have been proper. This reasoning fails where, as here, we never adjudicated the issue.

The government also relies on the following language from our decision in Standard's second appeal:

> The district court should proceed to re-sentence Standard, applying the 1988 Guidelines to the base offense level and enhancements related to Count 2 [tax fraud] and making new findings where those Guidelines so require. In addition, any Section 3 enhancements should be applied prior to the application of a multiple count adjustment. Any other enhancements previously made by the district court may be included in its calculation on resentencing.

According to the government, our express statement that the district court was free to apply any sentencing enhancements previously imposed necessarily implies that the district court's tax loss computation was proper. We disagree. The tax loss computation is used to determine the base offense level; it is not an enhancement. *See* U.S.S.G. § 2T1.3(a). Moreover, the only portion of the quoted language that suggests that we considered Standard's tax loss argument simply instructs the district court to apply the 1988 Guidelines and to make additional findings if necessary. Because we have not already decided the tax loss issue, either expressly or necessarily by implication, the law of the case does not preclude this appeal. We turn now to the merits of Standard's argument.

b.

Standard argues that the district court erred in failing to make legal and factual determinations that were necessary in calculating the base offense level for his tax conviction. Although the legal and factual questions are closely linked, we consider the legal question first, as its resolution could preclude the need to resolve the factual dispute.

1.

■ According to Standard, the district court erred in failing to determine whether California law in 1988 prohibited payments for unsolicited referrals. If California law permitted payments for unsolicited referrals, the district court should have made findings as to what portion of Standard's $1.7 million deduction, if any, was for unsolicited referrals. If unsolicited referrals were illegal under California law, then the entire $1.7 million deduction was improper and the district court correctly calculated the base offense level for the tax conviction.

Standard argues persuasively that only payments for solicited referrals were illegal under California law in 1988. Section 6152 of the California Business and Professional Code, which was in effect when Standard filed his 1988 tax return, makes it a crime "to solicit" a person to act as "a capper." Cal. Bus. & Prof.Code § 6152(a)(2). A capper is a person who acts as "an agent for an attorney at law ... in the solicitation or procurement of business for the attorney." Cal. Bus. & Prof.Code § 6151(a). Thus, as we held

previously, payments for solicited referrals are illegal under California law and, accordingly, constitute illegal deductions under § 162(c)(2). By using the word "solicit" in section 6152, criminal conduct is defined as payments only for those referrals that are obtained through solicitation; the statute does not proscribe payments for unsolicited referrals. Although the California Insurance Code was later amended to prohibit payments for any referral, this legislation was not enacted until 1990 and 1991 and thus does not apply to Standard's 1988 conduct. Moreover, if section 6152 already prohibited payments for unsolicited referrals, the later amendments would have been redundant. We have been unable to identify any law in effect in California in 1988 that established unsolicited referral payments as criminal conduct. Nor has the government brought such a law to our attention. In fact, despite having had numerous opportunities to address the legal distinction between solicited and unsolicited referral payments, the government has utterly failed to do so.

Because unsolicited referral payments were not illegal in California in 1988, the district court should not have used the $1.7 million deduction to calculate the base offense level for Standard's tax conviction without first determining whether all of the deducted payments were, in fact, for solicited referrals.

### 2.

 The government argues that Standard's sentence should be affirmed nonetheless because evidence in the record supports a finding that all of Standard's referrals were solicited. The government's focus is misplaced. Whether the district court *could* have found that all of the cases for which Standard paid a fee were solicited is not the relevant inquiry; rather, the question is whether the trial judge *did* make such a finding in accordance with his obligation under Federal Rule of Criminal Procedure 32(c)(1).

 We review de novo a district court's compliance with Rule 32. *See*

*United States v. Karterman,* 60 F.3d 576, 583 (9th Cir.1995). Rule 32 provides in relevant part:

> At the sentencing hearing, the court must ... rule on any unresolved objections to the presentence report. The court may, in its discretion, permit the parties to introduce testimony or other evidence on the objections. For each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing. A written record of these findings and determinations must be appended to any copy of the presentence report made available to the Bureau of Prisons.

Fed.R.Crim.P. 32(c)(1).

In order to determine whether the district court met its obligations under Rule 32, we set forth below the relevant events of each of Standard's three sentencings.

Prior to Standard's first sentencing, a presentence report was prepared that contained the following paragraph:

> 23. On October 14, 1989, Standard made and subscribed to a 1988 Form 1040 individual income tax return, under penalty of perjury, and filed it with the IRS. The return reported "other expenses" on the Schedule C in the amount of $2.1 million. **Of that amount, illegally deducted capping fees, labeled as "sign-ups," totaled $1,794,495.** During that same year, he received approximately $13 million in case settlements.

Standard specifically objected to this paragraph as factually inaccurate because, inter alia, he "dispute[d] that the deductions were illegal payments." He also argued that the tax loss computation was incorrect because "there was no proof as to how many of the cases referred to the defendant were actually solicited." At the first sentencing hearing, Standard's attorney

presented the following objection to the court:

[O]ne of the [government's] responsibilities is to produce evidence to your Honor to make a finding that they have to make now. They just assume willy-nilly that since they convicted Mr. Standard of capping and basically not deducting things, that that is a tax loss to the government. I don't want to make this argument too long, but have they really proved what portion of that money is a result of solicited cases? Their own expert testified at trial that, if you pay for a case that is not solicited, it will be a deductible expense.

Likewise, Standard himself addressed the court:

When the charges of filing false tax returns for 1987 and 1988, my response as given in the motion for a new trial proved, I believe, among other things, that the payments I made were not illegal until 1990; that many of the payments were not for soliciting cases, but came to me from people who asked to be represented by an attorney.

Without addressing Standard's solicited versus unsolicited argument, or his factual objections to the presentence report, the district court pronounced Standard's sentence and stated that "I find that the calculations of the sentencing guidelines by the Probation Officer are valid and correct[.]" The findings of fact and conclusions of law submitted by the Government and adopted verbatim by the district court contained the following two relevant paragraphs:

17. The court finds that the defendant's assertions with respect to PSR ¶ 23 are not supported by the record and this court further finds that PSR ¶ 23 accurately reflects the testimony of Steven Pines. This court further finds that the state law prohibiting capping was generally enforced as established by the testimony of Deputy City Attorney Ed Fimbres and State Bar Counsel Victoria Molloy.

43. This Court has considered the allegations in defendant's most recent sentencing memorandum, filed February 7, 1995, and finds it to be a reiteration of defendant's previous documents. The Court has considered it, along with the exhibits, and finds each argument contained therein to be without merit.

Standard's second sentencing memorandum contained the following argument:

Under the 1989 guideline, the base offense level is 6. The jury verdict did not establish any tax loss, only that the defendant overstated deductions in some amount.

\* \* \* \* \* \*

The tax fraud theory was based on California Business and Professions Code § 6152(a)(1) which makes it unlawful for any person to act as a capper for an attorney and therefore payments for capping were illegal under California law in 1988. The burden is on the government to show what part of the overall deduction was for capped cases and what part was simply referral fees. Referral fees only became illegal in California in 1991. See Insurance Code §§ 750 and 754. These sections have no application to this case.

During the second sentencing hearing, Standard's attorney argued:

The real issue in this case is the enhancement for the tax loss. . . . It's up to the Government—the burden of proof is on the Government to show what the tax loss is. As we indicate in our short memo, the only thing you can infer from the jury's verdict is that there was some tax loss, but it's up to the Government to prove anything beyond that.[2] Their the-

---

**2.** Standard correctly notes that the jury verdict does not constitute a sufficient finding on the issue of solicited versus unsolicited referrals because (1) no special verdict form was used, and (2) the jury was instructed that in order to find Standard guilty, they needed to find only that he overstated the deductions on his 1988 tax return "in some amount."

ory of the case was that it was capping income that was improper—capping expenses that were improperly deducted, and in our brief we say, assume that to be true, then show us or show the Court what the tax loss was. And in their brief they confuse referral fees with capping fees. . . .

Without addressing Standard's arguments regarding the tax loss computation or the issue of solicited referrals, the district court pronounced its sentence, stating that "I've gone over the findings of fact and conclusions of law which have been proposed by the Government, and I'm adopting those, I think that they are properly adoptable." The referenced findings of fact and conclusions of law contain the following paragraph:

> 2. The Tax Loss calculation for count two is 28% of the Amount by which defendant understated his taxable income for the year 1988, that is $502,459. Defendant failed to report $1,794,495 during the year 1988. The base offense level for count two is 16. USSG § 2T4.1(K).

In Standard's third sentencing memorandum, he again urges the court to recognize the difference between solicited and unsolicited referral payments:

> The Government's tax loss calculation of $502,459 for count 2 is based on 28% of the total referral fee payments of $1,794,495. The Government's position is that any referral fee payment is illegal. Defendant Standard has argued that in 1988 referral of unsolicited recommendations were not illegal under California law and that such payments did not become illegal until 1990 and 1991.

During the sentencing hearing, the district court merely pronounced Standard's sentence and agreed to look at the Government's findings later. The court did not accept the findings of the presentence report or make any findings of its own during the hearing. After Standard was sentenced, his attorney reiterated his objection:

> "We've set forth our objection. Basically we're objecting to the tax loss. . . ."

■ In each of the three instances, the district court failed to resolve the controverted matters in accordance with Rule 32. In the first sentencing hearing, although the court adopted the calculations contained within the presentence report, it failed to make the necessary findings to determine whether all of Standard's deductions were for solicited referrals. A district court may accept the presentence report as its findings of fact, but only after it has resolved all objections. *See* Fed. R.Crim.P. 32(b)(6)(D). Notably, neither the district court nor the Government has *ever* acknowledged the legal distinction between payments made for solicited cases and those made for unsolicited referrals. Certainly, no factual findings were ever made in this regard.

Although the first set of findings of fact and conclusions of law contains two paragraphs that *could* be construed as resolving Standard's objections, we believe these paragraphs are insufficient for three reasons. First, Rule 32 requires that the district court rule on any unresolved objections *at the sentencing hearing. See* Fed. R.Crim.P. 32(c)(1). Thus, the court may not resolve such objections post-hearing.

Second, the findings of fact relating to paragraph 23 do not specifically address Standard's objection regarding solicited referrals vis-a-vis unsolicited referrals. Instead, the findings uphold paragraph 23 by reference to the testimony of Steven Pines, Standard's accountant. Pines' trial testimony supported only those portions of paragraph 23 that Standard readily conceded, namely that Standard reported other expenses on Schedule C of his 1988 tax form in the amount of $2.1 million, and that of this amount, $1,794,495 was deducted as "sign-ups."

Third, the catch-all provision contained in the findings of fact and conclusions of law, which purports to find all of Standard's arguments "to be without merit," is too general and does not adequately ad-

dress Standard's objection. Furthermore, neither the second nor the third set of findings of fact and conclusions of law contain a similar paragraph.

In the second sentencing hearing, the court adopted verbatim the findings of fact and conclusions of law submitted by the Government. Examination of these findings is unhelpful, however, as they assume, without analysis, that all referral fees are illegal capping fees. As set forth above, this assumption is incorrect because California law did not prohibit payment for unsolicited referrals in 1988.

Finally, the district court at the third sentencing hearing simply pronounced Standard's sentence without acknowledging that he had raised objections.

Despite the fact that Standard repeatedly argued that the $1.7 million deduction included payments for both solicited and unsolicited referrals and was thus not properly used to compute the tax loss, the district court failed to make the findings necessary to resolve this objection. The court likewise failed to make a determination that no such findings were necessary. Indeed, the court could not make such a determination because the tax loss computation undoubtedly affects Standard's sentence.

■ Failure to make the necessary findings requires that the sentence be vacated and the defendant be resentenced. *See United States v. Fernandez–Angulo,* 897 F.2d 1514, 1516 (9th Cir.1990) (en banc). The district court failed to determine whether the payments deducted by Standard were for solicited referrals or unsolicited referrals.[3] We vacate Standard's sentence and remand for the district court to resolve this matter as re-

quired by Rule 32, and to resentence Standard in accordance with its findings.

**VACATED AND REMANDED.**

---

3. We note that in order for the district court to use the $1.7 million deduction to calculate Standard's base offense level, the government first must prove by a preponderance of the evidence that all of the deducted payments were for solicited referrals. *See United States v. Oliveros–Orosco,* 942 F.2d 644, 648 (9th Cir.1991) ("[T]he government bears the bur-

den of proving the facts necessary to establish the base offense level."). It is not Standard's burden to prove that some of the payments were for unsolicited referrals.