**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**William Kelvin HOUSTON,**
**Defendant–Appellant.**

**No. 99–50426.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 2, 2000.

Filed July 5, 2000.

---

David J. Zugman, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Richard C. Cheng, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

Before: WALLACE, TROTT, and GOULD, Circuit Judges.

TROTT, Circuit Judge:

William Kelvin Houston ("Houston") pleaded guilty to two counts of bank robbery pursuant to 18 U.S.C. § 2113(a). At sentencing, the district court enhanced Houston's base offense level by two, pursuant to United States Sentencing Guideline ("U.S.S.G.") § 2B3.1(b)(2) for express threats of death Houston allegedly made to two bank tellers during the course of the robberies. Houston asserts error in the district court's treatment of the disputed threats of death. He relies both on Federal Rule of Criminal Procedure 32(c)(1) ("Rule 32(c)(1)"), which requires a sentencing court to resolve matters in dispute, and argues also that the evidence of the threats was unreliable and, hence, inappropriate for the district court to consider at sentencing. We have jurisdiction

pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We agree that the district court failed to comply with Rule 32(c)(1), and we VACATE Houston's sentence and REMAND the case for resentencing.

## Background

The Presentence Report ("PSR") prepared for Houston's sentencing referred to statements Houston allegedly made during the course of the two robberies for which he was convicted. Relying on "investigative materials," the PSR noted that during the first robbery—on November 6, 1997, at a San Diego branch of Bank of America—Houston allegedly used "verbal threats" to achieve his objective. Specifically, the PSR recounted the statements of a bank teller, who stated that Houston came up to the teller window and said, "Give me all your twenties or I'll shoot you in the head." The PSR then noted that during the second robbery—on November 16, 1998, at the same Bank of America—Houston told another bank teller, "Don't be stupid unless you want to get shot."

The PSR reported that Houston denied making any threatening statements attributed to him during the first bank robbery and also reported Houston's version of the second bank robbery, which did not include the comments recalled by the second bank teller. In his "Objections to the Presentence Report and Sentencing Memorandum," Houston "object[ed] to the alleged threats that PSR [sic] attributes to him." At the sentencing hearing, Houston's counsel renewed the objections to the alleged threats as follows: "In terms of the guidelines calculation, there is a question as to whether this constitutes an express threat of death. There are two statements attributed to Mr. Houston in the probation report that he denies making."

The prosecutor responded to Houston's objections at the sentencing hearing by arguing that

the statements that this individual made to both victim tellers are rather distinct and clear: "Don't be stupid. Unless you want to get shot, give me all your twenties or I will shoot you in the head." Clearly those instances are statements in which Mr. Houston expressly made a threat on those two individuals.

Shortly thereafter, the district court entered its findings. The court noted that it had "heard the comments of counsel [and] those of Mr. Houston," and stated that it agreed with the prosecutor's "analysis concerning the threats. I don't know how much clearer it could be. In any event, there is a two-level increase based upon the threat of death . . . ."

The tellers' statements, as recounted in the PSR, constituted the only evidence of Houston's alleged threats. The tellers did not testify to the statements, Houston never subpoenaed the tellers, and the district court did not hold an evidentiary hearing concerning the alleged threats.

Houston received a sentence of fifty-seven months in jail. Had he prevailed on his challenge to the alleged tellers' statements and thus not received the two-level adjustment, his sentence range would have been 46–57 months instead of 57–71 months.

## Discussion

Houston makes two arguments on appeal. He argues that the district court failed to comply with Rule 32(c)(1) in connection with the dispute over the alleged death threats. Because he contends that the only evidence of the death threats was hearsay, and thus allegedly unreliable, he also argues that the district court should not have relied on the tellers' statements to resolve the death threat allegation against him. We agree with Houston that the district court did not comply with Rule 32(c)(1) and thus vacate his sentence and remand for resentencing.

■■■ We review de novo a district court's compliance with Rule 32. *United States v. Standard*, 207 F.3d 1136, 1140 (9th Cir.2000). A district court's decision

not to hold an evidentiary hearing in resolving disputed matters at sentencing is reviewed for an abuse of discretion. *United States v. Stein,* 127 F.3d 777, 780 (9th Cir.1997).

A district court's resolution of disputed evidence related to sentencing is governed by Rule 32(c).[1] Rule 32(c)(1) reads as follows:

> At the sentencing hearing, the court must afford counsel for the defendant and for the Government an opportunity to comment on the probation officer's determinations and on other matters relating to the appropriate sentence, and must rule on any unresolved objections to the presentence report. The court may, in its discretion, permit the parties to introduce testimony or other evidence on the objections. For each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing. A written record of those findings and determinations must be appended to any copy of the presentence report made available to the Bureau of Prisons.

Fed. R.Crim. Pro. 32(c)(1) (2000).

■ Our precedent requires "strict compliance" with Rule 32. *See, e.g., United States v. Garfield,* 987 F.2d 1424, 1428 (9th Cir.1993); *United States v. Fernandez–Angulo,* 897 F.2d 1514, 1516 (9th Cir. 1990) (en banc). We are convinced that this "strict compliance" has not been achieved in this case. Although the district court stated that it agreed with the prosecutor's "analysis" of the death threats, as we read the prosecutor's "analysis" at sentencing, we believe it addressed only the question of whether the statements attributed to Houston, if made, were express threats of death, and not to the basic factual question of whether he made the statements. The prosecutor twice stated that Houston made the alleged threats, but demonstrated no recognition that the fact of the statements was in dispute and made no effort to argue that Houston made them. The context of the prosecutor's statements demonstrates that attribution of the threats to Houston was a conclusory predicate of his "analysis," not a matter that he sought to prove to the district court.

Perhaps in an attempt to explain why no more effort was made to prove that Houston made the threats as described, the government asserted at oral argument that Houston is engaging in "appeal by ambush." In short, the government contends that Houston did not—at the district court level—clearly raise any objection to the PSR's attribution of the death threat statements. Houston's objection in his Sentencing Memorandum itself is indeed ambiguous. It is unclear whether a plain "object[ion] to the alleged threats" indicates an objection to the attribution of the alleged threats or an objection to the characterization of the statements as "threats of death." The resolution of this isolated ambiguity is unimportant, however, because at the sentencing hearing itself, Houston's counsel unequivocally identified both (1) that there was "a question as to whether this constitutes an express threat of death" and (2) that Houston "denie[d] making" the two statements attributed to him. At that point, then, two distinct disputes were squarely before the district court, calling for the procedures required by Rule 32(c)(1).

1. The Sentencing Guidelines also govern the issue. Section 6A1.3(a) reads as follows:

   When any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor. In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy. U.S.S.G. § 6A1.3(a) (1998). Section 6A1.3(b) refers district courts to Rule 32(c)(1) for resolution of disputed sentencing factors at a sentencing hearing. *See* U.S.S.G. § 6A1.3(b).

Rule 32(c)(1) plainly requires that "[f]or each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary." While the district court obviously resolved one of the contested issues by agreeing with the government's "analysis," it is impossible from our vantage point to glean whether both of the disputed issues were resolved, or only the dispute over whether the statements constituted "threats of death."[2] Under these circumstances, we cannot conclude that the district court's findings were made in "strict compliance" with Rule 32(c)(1).

The government argues that it is nonsensical to conclude that the district court did not find that Houston made the statements at issue because such a finding is a necessary predicate to imposing the sentencing enhancement at issue. This may be true, but it misses the point of the argument and simultaneously illuminates the valid purpose served by Rule 32. Because the district court did not specifically acknowledge the existence of the dispute over attribution of the statements, we are left to guess whether the court was even aware of such a dispute.

Although the district court stated that it had "heard the comments of counsel [and] those of Mr. Houston," our conclusion that it is unclear whether the district court resolved Houston's factual objection is bolstered by the government's own contention: Houston's objection, as initially raised in his Objections to the Sentencing Memorandum, was ambiguous. We conclude that Houston's counsel resolved any ambiguity at the sentencing hearing by stating that he was in fact challenging both the attribution of the statements and the

characterization of the statements as "threats of death." However, without a delineation of "each matter controverted" and a corresponding finding, we cannot be sure that the district court had a similar view of Houston's objection. *See United States v. Karterman,* 60 F.3d 576, 583 (9th Cir.1995) (noting that the district court first identified the matter in dispute, and then resolved the dispute).

We have previously indicated that Rule 32(c)(1) findings must be "express" or "explicit." *See id.* ("Although the district court's findings under Rule 32(c) must be 'express,' they need only state the court's resolution of the disputed issues.") (citing *United States v. Rigby,* 896 F.2d 392, 394 (9th Cir.1990)); *United States v. Petitto,* 767 F.2d 607, 609–10 (9th Cir.1985) ("Both the language of the rule and the Advisory Committee notes indicate that making and attaching explicit findings to the presentence report is mandatory."), *overruled on other grounds by Fernandez–Angulo,* 897 F.2d at 1517 n. 5. This is but another way of saying—as we did in *Fernandez–Angulo*—that "strict compliance" with Rule 32(c)(1) is required.[3]

*United States v. Rigby,* 896 F.2d 392 (9th Cir.1990), does not suggest otherwise. Although in that case we rejected the defendant's argument that the sentencing court should have issued "more express findings," we indicated that "the district court clearly explained the basis for its ruling." *Id.* at 394. In addition, unlike Houston's case, the defendant in *Rigby* "did not challenge the accuracy of any information in the [PSR], only inferences drawn from it." Thus, the "essential dispute" concerned "the appropriate guideline

---

**2.** Although we interpret the district court's findings to resolve only the dispute over whether the statements constituted express threats of death, the findings lacked clarity and specificity with regard to this issue as well. Houston, however, does not seek a remand on this issue. The statements identified in the PSR are unequivocally "threats of death"—a point Houston's counsel conceded at oral argument.

**3.** Although *Fernandez–Angulo* and *Petitto* dealt with Federal Rule of Criminal Procedure 32(c)(3)(D), the predecessor to Rule 32(c)(1), the variations in the two rules' language does not suggest that *Fernandez–Angulo*'s "strict compliance" requirement is now defunct. *See* Advisory Committee Notes to Rule 32, 1994 Amendments ("Subdivision (c) addresses the imposition of sentence and makes no major changes in current practice.").

range," and was not a matter requiring more detailed findings under Rule 32. *Id.*

Contrary to the implication of the government's argument, *Fernandez–Angulo* and Rule 32(c)(1) do not strike the balance in favor of assuming that the district court did what it was supposed to do when faced with a dispute over matters presented as fact in a PSR. Furthermore, nothing in the transcript of the sentencing hearing suggests, as the government contends, that the district court "adopted" the PSR as its findings on the disputed issue of whether Houston made the statements. The court stated that it "considered the probation officer's report," but no more. Here, because we are left guessing whether the district court recognized, contemplated, and resolved the attribution objection, we must remand the case for resentencing. *See Standard,* 207 F.3d at 1143; *Fernandez–Angulo,* 897 F.2d at 1516. Guessing is for contestants on television game shows, not for judges applying the law.

■ As for Houston's challenge to the propriety of the district court's reliance on the tellers' statements as recounted in the PSR, it is clear that the district court may do so as long as the information bears "some minimal indicia of reliability." *See United States v. Huckins,* 53 F.3d 276, 279 (9th Cir.1995); *United States v. Petty,* 982 F.2d 1365, 1369 (9th Cir.1993); *United States v. Kerr,* 876 F.2d 1440, 1446 (9th Cir.1989); U.S.S.G. § 6A1.3(a). We do not decide whether the information contained in the PSR was reliable. Instead, such a determination is a threshold matter for the district court to consider on remand.

■ Contrary to Houston's assertion, however, he has no right to an evidentiary hearing regarding the dispute over attribution of the statements. Although Rule 32(c)(1) requires that the court "afford counsel for the defendant ... an opportunity to comment on the probation officer's determinations and on other matters relating to the appropriate sentence," the court is left to its "discretion" whether it "permit[s] the parties to introduce testimony or other evidence on the objections." Fed.

R.Crim. Pro. 32(c)(1); *see Stein,* 127 F.3d at 780–81 ("Where the district court allows the defendant to 'rebut the recommendations and allegations of the presentence report either orally or through the submission of written affidavits or briefs,' Rule 32 does not require an evidentiary hearing.") (quoting *United States v. Sarno,* 73 F.3d 1470, 1502–03 (9th Cir.1995)).

### Conclusion

Because the district court did not satisfy the mandate of Rule 32(c)(1), we VACATE Houston's sentence and REMAND the case for resentencing.