**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Shashona R. CARTER, Defendant– Appellant.**

**No. 99–50388.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 5, 2000

Filed Aug. 9, 2000

Michael J. Treman, Santa Barbara, California, for the defendant-appellant.

Charlaine F. Olmedo, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

Before: THOMPSON, W. FLETCHER, and FISHER, Circuit Judges.

W. FLETCHER, Circuit Judge:

Shashona R. Carter ("Carter") pled guilty to one count of conspiracy to counterfeit fraudulent securities, in violation of 18 U.S.C. §§ 371, 513(a), and 514(a)(2). At sentencing, the district court enhanced Carter's base offense level by three levels pursuant to U.S.S.G. § 3B1.1 for playing a managerial or supervisory role in the offense, and by an additional twelve levels pursuant to U.S.S.G. § 2F1.1 because the amount of loss was greater than $1,500,-000. Carter appeals her sentence, contending that the district court erred in imposing these enhancements.

We hold that the district court failed to comply with Federal Rule of Criminal Procedure 32(c)(1). We VACATE Carter's sentence and REMAND for resentencing so that the district court may either resolve disputes concerning statements of fact in the pre-sentence report or make clear that the disputed facts were not taken into account in determining Carter's sentence.

I

Carter was originally indicted for two separate fraudulent schemes: one to manufacture, possess, and sell counterfeit travelers' checks, and the other to traffic in counterfeit credit cards. As part of the travelers' check scheme, the government alleged that Carter purchased genuine travelers' checks and assisted in obtaining a color copier on which the checks were duplicated. Participants in the scheme then used the counterfeit checks to buy merchandise in different states and receive change in cash. According to a disputed part of the pre-sentence report ("PSR"), Carter recruited and directed the "passers" or "shoppers" who would pass checks that she distributed to them, and drove them over state lines for the "shopping trips" during which the counterfeit checks were passed.

Carter was eventually arrested while on a "shopping trip" in California and was incarcerated for four months. While she was in jail, the color copier used to manufacture the fraudulent travelers' checks broke, and the remaining participants in the scheme began manufacturing fraudulent checks using a computer and a color printer. There is no evidence that Carter continued to participate in the travelers' check scheme after her release from jail.

Carter pled guilty to Count 1 of the first superseding indictment. This count charged violation of 18 U.S.C. § 371, conspiracy to traffic in counterfeit American Express travelers' checks, in violation of 18 U.S.C. §§ 513(a) and 514(a)(2). Carter claimed that the PSR incorrectly assessed a three-level increase in offense level for her role as a manager or supervisor. Carter also claimed that the PSR incorrectly stated an amount of loss in excess of $1,500,000, and that the loss properly attributable to her was not more than $201,000 (the loss from the scheme up to the time she was arrested). In all, Carter alleged eight factual errors in the PSR

bearing on her role in the offense and on the amount of loss.

The district judge conducted a two-day sentencing hearing. At the end of the hearing, the judge concluded that U.S.S.G. § 3B1.1 applied because Carter was a manager or supervisor. He further concluded that, in light of this supervisory role, the entire loss caused by all participants in the conspiracy, instead of merely that portion of the loss that occurred prior to Carter's arrest and incarceration, was properly considered under U.S.S.G. § 2F1.1. In so concluding, the district judge did not explicitly resolve the disputed factual issues in the PSR.

The two enhancements yielded a total adjusted offense level of 20, for a sentencing range of 63 to 78 months. Carter was sentenced to the statutory maximum of 60 months, restitution in the amount of $1,604,000, and three years of supervised release.

## II

■ We review *de novo* a district court's compliance with Federal Rule of Criminal Procedure 32. *See United States v. Standard*, 207 F.3d 1136, 1140 (9th Cir. 2000); *United States v. Karterman*, 60 F.3d 576, 583 (9th Cir.1995). We also review *de novo* the legality of a Guideline sentence. *United States v. Jackson*, 176 F.3d 1175, 1176 (9th Cir.1999) (*per curiam*). Whether a defendant is "an organizer, leader, manager, or supervisor" is a question of fact reviewed for clear error. *United States v. Mares–Molina*, 913 F.2d 770, 773 (9th Cir.1990). The same standard applies to a finding of the amount of loss for sentencing purposes. *See United States v. Barnes*, 125 F.3d 1287, 1290 (9th Cir.1997).

## III

■ Carter challenges the sentencing enhancements on the ground that the district court did not explicitly resolve the objections she raised to factual statements

in the PSR. A finding that a defendant is eligible for a sentence enhancement ordinarily does not require specific fact-finding. *See U.S. v. Govan*, 152 F.3d 1088, 1096 (9th Cir.1998). More is required, however, when a defendant contests specific factual statements made in the PSR. The district court's obligations are set out in Rule 32(c)(1):

> At the sentencing hearing, the court must afford counsel for the defendant and for the Government an opportunity to comment on the probation officer's determinations and on other matters relating to the appropriate sentence, and *must rule on any unresolved objections to the presentence report.* The court may, in its discretion, permit the parties to introduce testimony or other evidence on the objections. *For each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing.* A written record of these findings and determinations must be appended to any copy of the presentence report made available to the Bureau of Prisons.

Fed.R.Crim.P. 32(c)(1) (emphasis added).

■ It is well settled in this circuit that "when the district court fail[s] to make the required Rule 32 findings or determinations at the time of sentencing, we must vacate the sentence and remand for resentencing." *United States v. Fernandez–Angulo*, 897 F.2d 1514, 1516 (9th Cir.1990) (*en banc*). We have adopted this approach because of the unfairness that would result to a defendant if prison or parole officials were to rely on false allegations or uncorrected reports. *See United States v. Fernandez–Angulo*, 863 F.2d 1449, 1456 (9th Cir.1988) (*modified on rehearing by United States v. Fernandez–Angulo*, 897 F.2d 1514 (9th Cir.1990) (*en banc*)). In addition, resolving a defendant's factual objections to the PSR on the record ensures meaningful appellate re-

view of the sentence. *See id.; United States v. Ibarra,* 737 F.2d 825, 827–28 (9th Cir.1984).

■ For each disputed fact upon which the district court intends to rely in imposing the sentence, the district court must make an explicit factual finding that resolves the dispute. If the district court chooses not to rely upon a disputed factual statement in the PSR, it need not resolve the dispute, but it must clearly state that the disputed fact was not taken into account in finding the enhancement appropriate. *See United States v. Houston,* 217 F.3d 1204, 1207 (9th Cir.2000).

### A

■ We hold that the district court did not comply with the requirements of Rule 32(c)(1) in concluding that Carter was a manager or supervisor and therefore eligible for an enhancement based on her role in the offense. Carter challenged a number of specific factual statements in the PSR relevant to the role enhancement. While some of Carter's statements are little more than conclusory denials of the district court's ultimate finding that she was a manager or supervisor, others state specific facts that conflict with statements in the PSR. For example, Carter objected to paragraph 29 of the PSR, which stated that she "directed others" and "drove many of these individuals ('passers') to different areas of the United States to cash the counterfeit checks." Carter stated that the only time she worked with others was during the trip that resulted in her arrest. Carter also objected to paragraph 31 of the PSR, which stated that she had assisted a co-participant in purchasing the copier by giving her a counterfeit driver's license. Carter stated that a co-defendant provided the driver's license. She also pointed to evidence in the record indicating that the driver's license was provided by a co-defendant.

Carter disputed the PSR's portrayal of her role as a "distributor" of the checks in paragraph 33, claiming that she was given only three checks to "distribute." She denied that she was a recruiter for the runners, as alleged in paragraph 34 of the PSR. She also denied that she "maintained" the residence with a co-defendant in which incriminating evidence was found when law enforcement officials executed a search warrant, and denied knowledge of the scope and size of the scheme alleged in paragraph 79 of the PSR. Finally, Carter denied "directing" the activities of a specific individual named in paragraph 91 of the PSR; indeed, she denied even knowing that individual.

At the sentencing hearing, the district court stated generally that it believed Carter was the leader's "lieutenant," and then stated, "I have made the following findings: that she was a supervisor, manager." However, the district court neither resolved the disputed factual issues nor indicated that they were irrelevant to its conclusion that Carter was eligible for a role enhancement. The district court thus failed to comply with Rule 32.

Our holding is dictated by *United States v. Standard,* 207 F.3d 1136 (9th Cir.2000), where the defendant had objected to certain paragraphs in his PSR as factually inaccurate. The district court did not address the defendant's factual objections, but had simply stated in sentencing, "I find that the calculations of the sentencing guidelines by the Probation Officer are valid and correct." *Id.* at 1141. We reversed, holding that the district court failed to resolve the controverted matters in accordance with Rule 32. *Id.* at 1142. It was not sufficient to enter a finding of fact that did not specifically address defendant's objections. *Id.* at 1143.

That analysis controls our decision here. The question is not whether the underlying record contains evidence to support a finding that Carter was a supervisor or manager. *See Standard,* 207 F.3d at 1140. If the factual statements in the PSR were

uncontested, those facts would be adequate to support a role enhancement under U.S.S.G. § 3B1.1. But Carter disputed a number of those statements. Because the district court did not explicitly resolve those factual disputes, we have no way of knowing which disputed statements, if any, the district court relied on in making its findings.

The government disagrees with Carter's contention that the district court failed to resolve the factual disputes relevant to the role enhancement. It points to two statements by the district court: "But more importantly, I don't believe it. I don't believe that she was under the spell of Lyons. I think that the defendant is a calculating criminal who has lived a life in that fashion." Further, "I don't believe her when she tells me today that she told Lyons in June of 1995 that she was disavowing herself from the conspiracy. That's just an effort to gain some advantage for herself, at this point. She's simply not worthy of belief. The circumstantial evidence in this case and the testimony of others contradict her position." These statements clearly indicate that the district court disbelieved some of Carter's statements made during the sentencing hearing. But they fall short of an explicit resolution of factual disputes relevant to the role enhancement, or an explicit indication that the court was not relying on the disputed factual statements.

### B

The district court's failure to comply with Rule 32(c)(1) in imposing the role enhancement infected its conclusion that Carter should be held accountable for a loss of over $1,500,000.

■ Carter contended that she should not be sentenced for losses that resulted from the scheme's operation after she was incarcerated, and when the method of manufacturing the counterfeit travelers' checks changed from using a color copier to using a computer and a printer. As a general rule, the fact that a conspirator is taken into custody does not automatically constitute a disavowal of the conspiracy's goals. See, e.g., United States v. Arias–Villanueva, 998 F.2d 1491, 1511 (9th Cir. 1993); United States v. Johnson, 956 F.2d 894, 906–907 (9th Cir.1992). Instead, the Sentencing Guidelines hold a defendant accountable at sentencing for activity of others that "was both in furtherance of, and reasonably foreseeable in connection with, the criminal activity jointly undertaken by defendant." U.S.S.G. § 1B1.3, cmt. (n.1)

■ However, a decision whether to hold a defendant responsible for the conduct of another can properly depend upon the defendant's role in the offense. A minor participant is not held responsible, for sentencing purposes, for the criminal acts of others after the minor participant has been taken into custody. See Johnson, 956 F.2d at 907 ("it stretches a legal fiction to the breaking point" to hold a minor participant accountable for drugs distributed by a co-conspirator since, once in custody, "she was in no position to continue her role"). By contrast, a managerial or supervising participant may be held accountable for transactions occurring after arrest. See Arias–Villanueva, 998 F.2d at 1511 (defendant properly held responsible for subsequent transactions where he did not disavow conspiracy; "this is especially true because [he] was not merely a minor participant but played a managerial role in the conspiracy and had a close relationship with [the leader]").

■ In sentencing Carter, the district court stated, "And based upon what I have seen the conclusion I draw is, at that point in time, this defendant was Lyons' lieutenant; that[ ] *she played a supervisory and managerial role; and therefore she is responsible for the entire loss,* even if the method of manufacturing the fraudulent travelers' checks changed after she was in prison. That's my finding." (emphasis added). It is clear from this statement that the district court's finding of the amount of loss properly attributable to

Carter was based on its conclusion that Carter was a manager and supervisor. Because the district court's role enhancement finding cannot be sustained on the current record, we believe that its finding of the amount of loss similarly cannot be sustained.

## IV

Because the district court did not satisfy the requirements of Rule 32(c)(1), we VACATE and REMAND for resentencing consistent with this opinion.