**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Antonio HERRERA–ROJAS,**
**Defendant–Appellant.**

No. 99–50688.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 10, 2000

Filed March 15, 2001

Janice M. Deaton, San Diego, California, for the defendant-appellant.

Michael P. Skerlos, Assistant United States Attorney, Criminal Division, San Diego, California, for the plaintiff-appellee.

Before: BOOCHEVER, TROTT, and BERZON, Circuit Judges.

BOOCHEVER, Circuit Judge:

Antonio Herrera–Rojas pled guilty to bringing an illegal alien into the United States for commercial gain. He appeals the district court's sentence, claiming that the court failed to rule on his objections to the presentence report. He also claims that the court erred in enhancing his sentence for intentionally or recklessly creating a substantial risk of death or serious bodily injury to the aliens, and for the death of one of them.

## FACTS

On November 8, 1998, Border Patrol agents in the area near Pine Valley, California, responded to a sensor activation and followed the footsteps of a number of people heading toward Interstate 8. After an hour and fifteen minutes, the agents discovered six people lying in the brush at the side of the highway. Antonio Herrera–Rojas was one of the six.

The aliens were arrested and taken to the Border Patrol Checkpoint. At the checkpoint, Herrera–Rojas told the agents that one member of the group, Adrian Rogel Jaimes, was left behind on the trail when he became too weak to continue with them. Herrera–Rojas led them to Jaimes, who was dead from exposure. The weather was windy and cold, with temperatures in the low thirties, and some rain.

In statements after his arrest, Herrera–Rojas admitted that he had guided the group of aliens. He further stated that he had been smuggling undocumented aliens for three months, and was guiding the group for financial gain.

An indictment charged Herrera–Rojas with five counts of bringing in an illegal

alien for financial gain in violation of 8 U.S.C. § 1324(a)(2)(B)(ii). Herrera–Rojas pled guilty to one count on February 8, 1999.

The government submitted a presentence report. Herrera–Rojas filed objections to it. At a sentencing hearing on September 28, 1999, the district court calculated the sentence as follows:

| | |
|---|---|
| BASE OFFENSE LEVEL ("under U.S.S.G. § 2L1.1, Smuggling, Transporting or Harboring an Illegal Alien") | 12 |
| SPECIFIC OFFENSE CHARACTERISTICS: Six to 24 aliens involved, U.S.S.G. § 2L1.1(b)(2)(A) | + 3 |
| Intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person, U.S.S.G. § 2L1.1(b)(5) | 18 |
| Death of another person, U.S.S.G. § 2L1.1(b)(6) | + 8 |
| ADJUSTED OFFENSE LEVEL: | 26 |
| ACCEPTANCE OF RESPONSIBILITY: | – 3 |
| TOTAL OFFENSE LEVEL: | 23 |

Because Herrera–Rojas had no criminal history, the guideline range was 46–57 months. The district court sentenced him at the low end, ordering a 46–month imprisonment.

### I. *Objections to the presentence report*

Herrera–Rojas filed objections to the presentence report ("PSR"), disputing the following factual descriptions of his role in the death of Adrian Rogel Jaimes.

*The PSR's statement that he pressured the aliens to hurry.* The PSR stated that "[s]everal of the material witnesses indicated that Herrera would pressure them to hurry because they were running late." Herrera–Rojas objected that this statement was false, and that in fact the witnesses (the other aliens) stated that they had frequently stopped to wait out the rain and the wind on the journey.

*The case agent's statements.* Herrera–Rojas disagreed with the case agent's statement that Jaimes begged not to be left alone and that Herrera–Rojas told the group to adhere to a predetermined schedule.

*Acceptance of responsibility.* Herrera–Rojas disagreed with the PSR's statement that he did not admit to the probation officer that he was the guide for the group. (The PSR recommended that he not be

granted a downward adjustment for acceptance of responsibility.)

*The probation officer's analysis.* Herrera–Rojas objected to the probation officer's conclusion that he had exposed the aliens to extreme weather conditions, resulting in their suffering from the extreme cold and the death of one; that he could not have cared for his pregnant common-law wife, as he left her alone in Tijuana with no money; that he had been repeatedly arrested for illegal entry, and had connections with several known smugglers; and that the "traumatization" of the fourteen-year-old nephew of the deceased, who had been with his uncle on the trip and was arrested and detained, was Herrera–Rojas' responsibility. Herrera–Rojas called these conclusions "argumentative and exaggerated."

*The sentence.* Herrera–Rojas also objected to the 78–month sentence recommended by the PSR.

Federal Rule of Criminal Procedure 32(c)(1) provides, in relevant part:

> at the sentencing hearing the court ... must rule on any unresolved objections to the presentence report.... For each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing.

"'If the district court fails to make the required Rule 32 findings or determinations at the time of sentencing, the sentence must be vacated and the defendant resentenced.'" *United States v. Gutierrez–Hernandez,* 94 F.3d 582, 584 (9th Cir.1996) (internal alterations omitted) (quoting *United States v. Fernandez–Angulo,* 897 F.2d 1514, 1516 (9th Cir.1990) (en banc)). "Our precedent requires strict compliance with Rule 32." *United States v. Houston,* 217 F.3d 1204, 1207 (9th Cir. 2000) (quotation marks omitted). This court reviews de novo the district court's compliance with Rule 32. *See United*

*States v. Karterman,* 60 F.3d 576, 583 (9th Cir.1995).

■ The district court did not explicitly rule on any of the objections, nor state that the controverted issues would not be taken into account at sentencing. The court simply made "findings" regarding the numerical offense level, the adjustments, and acceptance of responsibility. The court did not mention the PSR except to make it part of the record, did not adopt its reasoning, and did not mention the objections filed by Herrera–Rojas at all. The court, like the prosecutor, "demonstrated no recognition that the fact[s were] in dispute." *Houston,* 217 F.3d at 1207. Because we require strict compliance with Rule 32, and because "it is impossible from our vantage point to glean whether ... the disputed issues were resolved," *id.,* remand for resentencing is necessary.

The government argues, however, that because no "unresolved" issues remained at the time of the hearing, there were no controverted matters requiring findings. But Herrera–Rojas' objections did controvert the account given by the PSR of his behavior during the journey, particularly at the moment that Jaimes was left behind. Those are factual disputes the court neither resolved nor indicated were irrelevant to its decision. Although Herrera–Rojas' counsel did acknowledge that Herrera–Rojas attempted to "push them on out of concern for their safety and survival," the PSR stated that he hurried the aliens because they were running late, left Jaimes alone simply to adhere to a schedule, refused to help the group find INS agents to help Jaimes, and instructed them to continue on.

■ Intent or recklessness is required to enhance Herrera–Rojas' sentence for creating a risk of death or serious bodily injury under U.S. Sentencing Guidelines 2L1.1(b)(5), and the accuracy of the PSR's description of Herrera–Rojas' behavior is relevant to determining Herrera–Rojas' intent. Under Rule 32, the court must make an explicit "determination that no finding is necessary." Otherwise "we are left guessing whether the district court recognized, contemplated, and resolved the ... objection." *Houston,* 217 F.3d at 1209.

We therefore vacate Herrera–Rojas' sentence and remand for resentencing. The district court shall explicitly consider the objections to the PSR and state whether the objections are relevant to its imposition of the sentence.

## II. Application of U.S.S.G. § 2L1.1(b)(5) and (b)(6)

### A. Standard of proof

■ Herrera–Rojas argues that the district court should have employed a higher standard of proof than a preponderance of the evidence in determining that he "intentionally created this situation." " '[W]hen a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction,' the government may have to satisfy a 'clear and convincing' standard." *United States v. Hopper,* 177 F.3d 824, 833 (9th Cir.1999) (quoting *United States v. Restrepo,* 946 F.2d 654, 659 (9th Cir.1991) (en banc)), *cert. denied,* 528 U.S. 1163, 120 S.Ct. 1179, 145 L.Ed.2d 1086 (2000). In *Hopper,* a sentencing factor called for a seven-level adjustment resulting in a sentencing range of 63–78 months rather than 24–30 months. We concluded that a potential increase of 48 months had a disproportionate effect, given the relative shortness of the original range. *See Hopper,* 177 F.3d at 833. Subsequently, we have employed a case-by-case analysis in determining whether an increase is disproportionate. *See United States v. Valensia,* 222 F.3d 1173, 1182 (9th Cir.2000) (listing cases and factors considered in each), *vacated,* ––– U.S. –––, 121 S.Ct. 1222, 149 L.Ed.2d 133 (2001).

■ As explained below, Herrera–Rojas' intent was relevant only to the three-level increase under U.S.S.G. § 2L1.1(b)(5). Without that three-level increase, the sentencing range would have been 33–41 months rather than 46–57

months. Herrera–Rojas' 46–month sentence, at the bottom end of the higher range, was increased by thirteen months from 33 months, the bottom of the lower range. A thirteen-month increase is not "extremely disproportionate" to a 33–month sentence, and the district court did not err in using the preponderance of the evidence standard. *See Valencia,* 222 F.3d at 1182 (sentence enhancement that more than doubles the original sentence has been found disproportionate if original sentence was relatively short).

B. *Other objections*

 First, Herrera–Rojas argues that his sentence was improperly enhanced for recklessly or intentionally creating a risk of serious bodily harm or death, because he was in the same situation as the other aliens he transported. But U.S.S.G. § 2L1.1(b)(5) provides for an increase "[i]f the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to *another person.*" (emphasis added). On the face of the Guidelines section, it is the risk to *others* that justifies the increase. Whether the defendant himself engages in risky behavior is irrelevant. Further, Herrera–Rojas did not argue this issue in the district court.

 Second, Herrera–Rojas argues that U.S.S.G. 2L1.1(b)(6) requires intent. The section states: "If any person died or sustained bodily injury, increase the offense level according to the seriousness of the injury." A death requires an eight-level increase. *Id.* at (b)(6)(4).

We reject this argument. Section (b)(5), immediately preceding § (b)(6), specifies that intent or recklessness is required to hold a defendant responsible for creating the *risk* of death. Section (b)(6)(4) states simply that if death results, an increase is required. The failure to specify that intent is required, immediately following a section that specifies intent, is a clear indi-

cation that no intent is necessary for an increase under § (b)(6).

 Third and finally, Herrera–Rojas claims that the court could not apply both §§ (b)(5) and (b)(6), because the creation of the risk of death penalized by § (b)(5) is a necessary element of the occurrence of death as penalized by § (b)(6), and so to apply both is "double counting" for the same conduct. Impermissible double counting "occurs where one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by the application of another part of the Guidelines." *United States v. Archdale,* 229 F.3d 861, 869 (9th Cir.2000) (quotation marks omitted). The death of Jaimes was not fully accounted for by the application of the guideline punishing the creation of a mere risk of serious bodily injury or death.

 Further, it is double-counting when "the same conduct on the part of the defendant is used to support separate increases under separate enhancement provisions *which necessarily overlap, are indistinct, and serve identical purposes.*" *United States v. Fisher,* 132 F.3d 1327, 1329 (10th Cir.1997) (emphasis added) (quotation marks omitted). These sections, however, do not overlap, are distinct, and serve different purposes. Section (b)(5) provides for an increase for the defendant's intentional or reckless *conduct,* with no consideration of the outcome; it does not matter whether an alien was actually harmed by the risk of serious bodily injury or death. Section (b)(6) provides for an increase for the *outcome* (the actual harm caused) of alien smuggling, with no consideration of the defendant's intentional or reckless conduct.[1] It is not double counting to impose two increases based on the same conduct when "one increase focuses solely on the defendant's conduct and the other increase focuses on the na-

---

1. We assume, however, that for § (b)(6) to apply, the relevant death or injury must be causally connected to dangerous conditions created by the unlawful conduct, as it was in this case.

ture and degree of harm caused by the defendant's conduct." *United States v. Perkins*, 89 F.3d 303, 310 (6th Cir.1996); *see United States v. Ledford*, 218 F.3d 684, 691 (7th Cir.2000) (proper to impose bodily injury enhancement in addition to enhancement for "otherwise using" firearm; one section focuses on conduct, use of firearm without regard to injury; other focuses on outcome of use, resulting injury); *Fisher*, 132 F.3d at 1329 (no double-counting to enhance sentence for physical restraint of victim and for resulting injury, when victim "was physically restrained with the gun and ... separately or in the process, he suffered bodily injury").

## CONCLUSION

We vacate the sentence and remand for resentencing. The district court shall explicitly address and resolve Herrera–Rojas' objections to the PSR and state whether the objections are relevant to the sentence the court imposes.

VACATED AND REMANDED FOR RESENTENCING.