**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

KAE CHAI SAETEURN,
            *Defendant-Appellant.*

No. 06-10401

D.C. No.
CR-05-00033-DFL

OPINION

Appeal from the United States District Court
for the Eastern District of California
David F. Levi, District Judge, Presiding

Argued and Submitted
June 11, 2007—San Francisco, California

Filed October 15, 2007

Before: Michael Daly Hawkins, A. Wallace Tashima, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Bea

14003

## COUNSEL

Daniel J. Broderick, Federal Defender, Timothy Zindel, Assistant Federal Defender, Sacramento, California, for the defendant-appellant.

McGregor W. Scott, United States Attorney, Anne E. Pings, Kyle Riordan, Assistant United States Attorneys, Sacramento, California, for the plaintiff-appellee.

## OPINION

BEA, Circuit Judge:

This case deals with sentencing practice. Specifically, is the sentencing judge required to resolve disputes regarding facts recited in the Presentence Investigation Report ("PSR"),[1] when those facts do not affect the term of imprisonment imposed, but may affect how the sentence is served, including a possible early release from prison? We hold that there is no such requirement upon the sentencing judge. We also consider whether the sentencing judge imposed a reasonable sentence in this case. We conclude that he did.

## I.

Kae Chai Saeteurn was indicted on several narcotics offenses, including one count of conspiracy to distribute 3,4-Methylenedioxymethamphetamine HCL ("MDMA")[2] in violation of 21 U.S.C. §§ 841(a)(1)[3] and 846[4]; one count of distribution of MDMA in violation of 21 U.S.C. § 841(a)(1); and one count of possession with intent to distribute MDMA in violation of 21 U.S.C. § 841(a)(1). Saeteurn entered a plea of guilty to the count of conspiracy to distribute MDMA and the count of possession with intent to distribute MDMA. The district court sentenced Saeteurn to 63 months in prison followed by a 36-month term of supervised release.

---

[1]Pursuant to Federal Rule of Criminal Procedure 32(i)(3)(B).

[2]MDMA is commonly known as "ecstasy."

[3]21 U.S.C. § 841(a)(1) provides in pertinent part: "[I]t shall be unlawful for any person knowingly or intentionally—(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . ."

[4]21 U.S.C. § 846 provides: "Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

### A.   Underlying Crime

Saeteurn's conviction was a result of his distribution of MDMA and cocaine in the Sacramento area. Before Saeteurn's indictment, agents from the Drug Enforcement Administration ("DEA") conducted an investigation of Saeteurn's co-defendant John Kim. A confidential source had identified Kim as a seller of MDMA and cocaine in the Sacramento area. The investigation also identified Randel Santos, Lina Pak, and Saeteurn as Kim's associates in the distribution of controlled substances.

During the DEA's investigation, the confidential source and an undercover officer purchased MDMA pills from Kim and Santos on a number of occasions.[5] On one occasion, Pak delivered approximately 1,000 pills the undercover officer had purchased from Kim and Santos. Pak later identified Saeteurn as the supplier of these pills. On another occasion, Kim and Santos were arrested while delivering 3,000 MDMA pills to the undercover officer. Kim agreed to assist officers in arresting others involved in selling MDMA and called Saeteurn, asking him to supply Kim with 3,000 MDMA pills. Officers arrested Saeteurn when he arrived to provide Kim with the 3,000 MDMA pills.

Kim, Santos, Pak, and Saeteurn all pleaded guilty the same day. The district court sentenced all co-defendants at the same sentencing hearing.

### B.   Sentencing Hearing

Before the sentencing hearing, the probation officer prepared a PSR, which calculated a sentencing range for Saeteurn of 78 to 97 months' imprisonment based on the now-advisory Sentencing Guidelines ("Guidelines"). The PSR rec-

---

[5]We describe these occasions because Saeteurn claims the trial judge relied on them at sentencing.

ommended a sentence of 78 months.[6] PSR at 19. The PSR listed Saeteurn's citizenship status as "Legal permanent resident."

Saeteurn contested his citizenship status listed in the PSR at the sentencing hearing. Saeteurn claimed he automatically became a United States citizen when his mother became a citizen on December 4, 1996, because he was a minor child at the time.[7] The district court expressed doubt as to whether it was "in a position to resolve" that "legal question." Instead of resolving the contested issue, the district court ordered that the PSR be amended to state that Saeteurn was either a "legal permanent resident or citizen." The issue is important to Saeteurn because his counsel believed that it would affect the place where Saeteurn would be designated to serve his 63-month sentence, whether he would be eligible to participate in certain rehabilitative programs, and whether he would be eligible for early release from prison, but not from supervised release, upon successful completion of those programs.

The court sentenced Kim to 60 months' imprisonment, Santos to 72 months' imprisonment, Saeteurn to 63 months'

---

[6]At the sentencing hearing, the district court sustained Saeteurn's objection to the probation officer's calculation of the base offense level under the Guidelines. Calculated correctly, Saeteurn's offense level was 25, not the 27 suggested by the probation officer. Hence the recommended Guideline range was 63-78 months, not the 78-97 months suggested by the probation officer's erroneous calculation. The judge made these corrections. There is no appeal from these calculations.

[7]In support of this contention, Saeteurn submitted a copy of his mother's certificate of naturalization and a letter containing the opinion of a private immigration attorney that Saeteurn became a citizen when his mother was naturalized. The attorney stated:

I am advised that the probation office declined to describe [Saeteurn] as a citizen because I had applied for a certificate of citizenship on his behalf . . . . As a matter of fact and law, however, Mr. Saeteurn has been a citizen of the United States for nearly 10 years. It is his certificate rather than his citizenship that is "pending."

imprisonment, and Pak to 37 months' imprisonment. While the court considered the 18 U.S.C. § 3553(a) factors for each defendant, the court also noted that it wanted to avoid disparity in sentencing among the co-defendants given their respective roles in the conspiracy.

Saeteurn timely appealed his sentence, raising two challenges. First, Saeteurn asserts that the district court failed to comply with Federal Rule of Criminal Procedure 32(i)(3)(B) by not resolving Saeteurn's objection to his citizenship status in the PSR. Second, Saeteurn asserts that the district court misapplied 18 U.S.C. § 3553(a)(6) by attempting to achieve parity in sentencing amongst his co-defendants and thus imposed an unreasonable sentence on Saeteurn. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we reject both assertions.

## II.

We review de novo the district court's compliance with Federal Rule of Criminal Procedure 32. *United States v. Thomas*, 355 F.3d 1191, 1194 (9th Cir. 2004). We review a district court's sentence for reasonableness in light of the sentencing factors set forth in 18 U.S.C. § 3553(a). *United States v. Cantrell*, 433 F.3d 1269, 1278 (9th Cir. 2006). The Supreme Court has recently clarified that we may attach a presumption of reasonableness to sentences falling within the Guidelines range. *Rita v. United States*, 127 S. Ct. 2456, 2462-68 (2007).

## III.

[1] We first consider Saeteurn's assertion that the district court failed to comply with Federal Rule of Criminal Procedure 32(i)(3)(B) by failing to resolve the factual dispute surrounding his citizenship status.[8] Rule 32(i) provides, in relevant part:

---

[8]Saeteurn lodged a proper objection to this portion of the PSR at his sentencing hearing.

(3) At sentencing, the court:

. . . .

(B) must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing; and

(C) must append a copy of the court's determination under this rule to any copy of the presentence report made available to the Bureau of Prisons.

Fed. R. Crim. P. 32(i)(3)(B), (C). On past occasions, we have held that "[s]trict compliance with the rule is required." *United States v. Garfield*, 987 F.2d 1424, 1428 (9th Cir. 1993) (citing *United States v. Fernandez-Angulo*, 897 F.2d 1514, 1516 (9th Cir. 1990) (en banc)). "If the district court has failed to make the requisite findings, this court must vacate the sentence and remand for resentencing." *Id.* However, "[i]f the district court chooses not to rely upon a disputed factual statement in the PSR, it need not resolve the dispute, but it must clearly state that the disputed fact was not taken into account in finding the enhancement appropriate." *United States v. Carter*, 219 F.3d 863, 867 (9th Cir. 2000). Although we agree with Saeteurn that the district court did not resolve his objection,[9] we disagree that such failure violated Rule 32(i)(3)(B). We reach this conclusion for three reasons.

**[2]** First, although we have admittedly used broad language

---

[9]The district court was not required to grant Saeteurn citizenship to resolve his objection. Saeteurn was merely asking the court to make a factual determination based on the evidence Saeteurn presented the court.

in the past to describe the district court's obligation to comply with Rule 32(i)(3)(B), we have never considered a situation where the disputed fact stated in the PSR has no effect on the temporal term of the sentence the district court imposed. Instead, each of our cases considering whether the district court complied with the rule involved factual disputes underlying sentencing enhancements of prison time to be served under the Guidelines. *See, e.g.*, *United States v. Leyva-Franco*, 311 F.3d 1194 (9th Cir. 2002) (per curiam ) (dispute over whether the criminal conduct constituted aberrant behavior, *see* U.S.S.G. § 5K2.20); *United States v. Herrera-Rojas*, 243 F.3d 1139 (9th Cir. 2001) (dispute over whether the defendant had the intent to create a risk of death or serious bodily injury, *see* U.S.S.G. § 2L1.1(b)(5)); *Carter*, 219 F.3d 863 (dispute over whether the defendant was a "manager" or "supervisor," *see* U.S.S.G. § 3B1.1); *United States v. Standard*, 207 F.3d 1136 (9th Cir. 2000) (dispute over the amount of improper deductions taken in a tax fraud prosecution, *see* U.S.S.G. § 2T1.3(a)).[10]

---

[10]The case which arguably supports Saeteurn's position is *United States v. Petitto*, 767 F.2d 607 (9th Cir. 1985), *overruled on other grounds by Fernandez-Angulo*, 897 F.2d 1514. In *Petitto*, we stated:

> We agree with [*United States v.*] *Travis*, [735 F.2d 1129, 1132-33 (9th Cir. 1984),] for the primary purpose of [R]ule 32(c)(3)(D) is to ensure that the presentence report used by the Bureau of Prisons and the Parole Board be as accurate as possible. Unless the court makes explicit findings and attached them to the report, even if it finds a challenged allegation in the presentence report untrue, and does not rely on it for sentencing, prison or parole officials may subsequently receive the uncorrected report and rely on the false allegation in correctional or parole decisions. That possibility is precisely what [R]ule 32(c)(3)(D) seeks to prevent.

*Id.* at 610 (ending citations omitted). However, like the cases cited above, *Petitto* involved a dispute that was directly relevant to the prison time to be imposed at sentencing—the number of drug-purchasing trips the defendant had made and the number of drug transactions in which he had been involved, in a case in which the defendant had pleaded guilty to a drug conspiracy and two counts of possession with intent to distribute. *See id.*

**[3]** In this case, Saeteurn's objection had no relevance to the district court's determination of the prison time of his sentence. The only relevance of Saeteurn's citizenship as listed in the PSR is its potential effect on the Board of Prison's ("BOP") post-sentencing decisions, such as where to house Saeteurn and Saeteurn's eligibility for prison programs and early release from prison, but not necessarily from supervised release. Because our cases which have applied Rule 32(i)(3)(B) are confined to factual disputes which affected the temporal prison term of the sentence the district court imposed, Saeteurn's contention the district court violated the rule in this case has no precedential support.

Second, according to the Advisory Committee on Criminal Rules ("Advisory Committee"), Rule 32(i)(3)(B) applies only to matters that will affect the determination and imposition of a correct sentence. It does not apply to disputes that will affect only post-sentence decisions and the manner and location of service of the sentence. As the Advisory Committee reported:

> [T]he Committee considered, but did not adopt, an amendment that would have required the court to rule on any "unresolved objection to a material matter" in the presentence report, whether or not the court will consider it in imposing an appropriate sentence. The amendment was considered because an unresolved objection that has no impact on determining a sentence under the Sentencing Guidelines may affect other important post-sentencing decisions. For example, the Bureau of Prisons consults the presen-

at 608-09. Not only was the above-quoted discussion about the "primary purpose" of Rule 32 dicta unrelated to the sentencing dispute before this court, but the case also involved an earlier version of Rule 32 which contained much broader language than the current version in Rule 32(i)(3)(B). *See* Fed. R. Crim. P. 32(c)(3)(D) (1983). The Advisory Committee amended the Rule in part to make clear that the rule applies only to factual disputes which affect the temporal term of sentence. *See infra.*

tence report in deciding where a defendant will actu-
ally serve his or her sentence of confinement. . . .

   To avoid unduly burdening the court, the Commit-
tee elected not to require resolution of objections that
go only to service of sentence . . . .

   If counsel objects to material in the presentence
report that could affect the defendant's service of
sentence, the court may resolve the objection, *but is
not required to do so*.

Fed. R. Crim. P. 32, Advisory Committee Notes, 2002
Amendments (emphasis added).

[4] Thus, as the drafters of the rule have clearly explained,
Rule 32 does *not* require the sentencing judge to resolve dis-
putes that affect only the manner and location of service of
the sentence, and not the term imposed.[11] Saeteurn's dispute—
whether he is a U.S. citizen or a lawful permanent resident—
is a dispute regarding manner and location of service, rather
than term imposed.

   Finally, to require sentencing judges to resolve the many
factual issues that do not relate to the actual term of sentence

---

[11]We look to Advisory Committee Notes when interpreting a federal
rule for "guidance and insight." *United States v. Vega*, 188 F.3d 1150,
1154 n.4 (9th Cir. 1999); *see, e.g.*, *United States v. Curtin*, 489 F.3d 935,
943 (9th Cir. 2007) (en banc) (examining the Advisory Committee Notes
to Federal Rule of Evidence 402 in determining what is relevant evi-
dence); *Conlon v. United States*, 474 F.3d 616, 625 & n.6 (9th Cir. 2007)
(discussing the Advisory Committee Notes to Federal Rule of Civil Proce-
dure 36(b) in determining that a district court's failure to consider the two
factors set forth in the rule for allowing a party to withdraw an admission
constitutes an abuse of discretion); *United States v. Nguyen*, 465 F.3d
1128, 1131-32 (9th Cir. 2006) (looking to the Advisory Committee Notes
accompanying Federal Rule of Evidence 803(22)). Accordingly, the Advi-
sory Committee's discussion of the scope of Rule 32(i)(3)(B) is relevant
here.

to be imposed would create a hazard to navigation for sentencing judges. For example, Saeteurn contends that the inaccuracy in his PSR will affect his eligibility for early release because the BOP does not release non-citizens early. However, prison programs and policies may change from time to time; requiring sentencing judges to determine which disputed facts *might* affect a prisoner's eligibility for early release, and then to resolve those disputes, would force sentencing judges to anticipate and resolve disputes beyond normal judicial reach. Although we are aware that prisoners have a right to be considered for early release, *see, e.g.*, *Serrato v. Clark*, 486 F.3d 560, 565-67 (9th Cir. 2007); *Cort v. Crabtree*, 113 F.3d 1081, 1085 (9th Cir. 1997), facts which might affect such consideration are properly resolved through administrative determination by the BOP or, if necessary, through a habeas petition brought pursuant to 28 U.S.C. § 2241. *See Lopez v. Davis*, 531 U.S. 230, 236-45 (2001) (considering a § 2241 petition brought by a prisoner who challenged the BOP's determination that he was not eligible for early release).[12] As *Serrato*, *Cort*, and *Lopez* illustrate, federal courts sitting in habeas corpus jurisdiction are ready and able to resolve disputes concerning a prisoner's eligibility for early release.

**[5]** In sum, although the district court did not resolve Saeteurn's objection to his citizenship status as listed on the PSR, the district court's failure to do so did not violate Rule 32(i)(3)(B), which is limited to factual disputes which affect the temporal term of the sentence the district court imposes. Accordingly, we reject Saeteurn's first assertion.

---

[12]Thus, even if the BOP has no administrative procedure for resolving inaccuracies in the PSR, Saeteurn has the ability to bring a § 2241 habeas petition in which he may challenge his confinement. In *Lopez*, the prisoner was not required first to challenge the BOP's determination in an administrative proceeding before filing his habeas petition. The Court explained that the prisoner filed his habeas petition directly upon learning he was ineligible for early release. 531 U.S. at 236-27. We are satisfied that a habeas petition brought pursuant to § 2241 is sufficient to safeguard a prisoner's right to be considered eligible for early release.

## IV.

**[6]** Saeteurn next asserts that the district court misconstrued and then misapplied 18 U.S.C. § 3553(a)(6), which allows courts in determining a sentence to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Saeteurn claims the district court misapplied § 3553(a)(6) by comparing Saeteurn to his co-defendants and focusing on parity amongst co-defendants when sentencing Saeteurn to 63 months' incarceration—a sentence at the bottom of the Guidelines recommended 63-78 month range in Saeteurn's case. We construe Saeteurn's claim on appeal to be that the district court's misapplication of § 3553(a)(6) resulted in an unreasonable sentence. *See United States v. Marcial-Santiago*, 447 F.3d 715, 717-19 (9th Cir. 2006) (reviewing a challenge to a sentence on the basis that the district court failed adequately to consider § 3553(a)(6) for reasonableness).

**[7]** Our sister circuits generally agree that "Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case." *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006); *see also United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006) ("[T]he kind of 'disparity' with which § 3553(a)(6) is concerned is an unjustified difference across judges (or districts) rather than among defendants to a single case."). However, our review of the sentencing transcript shows that the district court's primary purpose in comparing the defendants during sentencing was *not* to achieve sentence parity amongst the co-defendants, but to ascertain each defendant's role in the drug conspiracy. Indeed, the sentencing transcript in this case shows the sentencing judge carefully and conscientiously applied the § 3553(a) factors to impose a reasonable sentence.

**[8]** Section 3553(a)(1) expressly allows courts to consider "the nature and circumstances of the offense and the history

and characteristics of the defendant" in imposing a sentence. Here, the district court's primary purpose in comparing the co-defendants was to ascertain "the nature and circumstances of the offense" for each defendant in accordance with § 3553(a)(1). For example, the district court explained that it called the cases together for sentencing so that it could "consider the different roles and culpability that each of the defendants had in this case, because that is, in [the court's] view, how 3553(a) applies here, in particular the *nature and circumstances of the offense* and the *history and characteristics* of the defendant." (emphases added).

**[9]** The court's attempt to ascertain the nature and circumstances of each defendant's crime and sentence accordingly is illustrated by the court's comparison of Saeteurn and Santos:

> I will tell you that I'm contemplating a 72-month sentence for Mr. Saeteurn, because I see these two [Saeteurn and Santos] as being roughly comparable, although I think Mr. Saeteurn is more culpable because he's the supplier of a very large quantity of MDMA, and also there's some personal characteristics here which are troubling, notwithstanding the post-arrest turnaround.

> * * *

> . . . I think usually we think of the supplier as being the more culpable, and I think we make an assumption that somebody who can supply large quantities to one person is probably supplying large quantities to other people as well.

> So in terms of who's responsible ultimately for spreading the drug out onto the street, it's the person who has the most access to the drugs who's providing them and probably making the most money.

Such comparison, we think, was not to achieve sentencing parity amongst co-defendants but to ascertain exactly what role each defendant had played in the drug conspiracy and impose a correct sentence in light of each defendant's relative culpability.

That there can be no doubt the court sought to impose a reasonable sentence in light of the § 3553(a) factors is further illustrated by the court's examination of Saeteurn's personal history and characteristics:

> But I also have to take into consideration the fact that Mr. Saeteurn abused his domestic partner, that he was in the criminal justice system in 2004, which was right before the event here. That was surely the time to turn his parenting skills around, if there was one. He didn't do that then. He has no high school diploma. He had an other than honorable discharge from the Navy. Not a lot has been going on for Mr. Saeteurn, and he is a major supplier here in this case of MDMA. These are thousand-pill quantities, which unless you can inform me differently, seems like a lot of a drug.

Before imposing Saeteurn's sentence, the court again carefully explained Saeteurn's personal history and his specific role in the offense.

> I must say, I came in here with the intention of sentencing Mr. Saeteurn to a 72-month sentence, but I listened to what's been said, and I think it's fair to make a distinction between Mr. Saeteurn and Mr. Santos, primarily because of their criminal history. To a lesser degree, because of [Saeteurn's post-arrest rehabilitation].
>
> I have to say, Mr. Saeteurn, I hope you turned your life around. But whereas your attorney is justi-

fiably focused on what's happened to you since your arrest and makes argument from that, and while I've taken that into consideration, I'm taking a somewhat broader view of you. You have not been a good father. You have not been a good boyfriend. You have not been a good employee. You have not been a good soldier. You have not been a good student. And if you're going to start being these good things, you're going to have to do them for more than a year and a half while you're waiting for sentence. You're going to have to do it when you get back out from prison, when life is hard again and it takes real effort for you to get ahead, and where you're tempted to do things that you shouldn't do. You do have a drug addiction, and if you don't acknowledge that, then you're going to be back in front of me again. But I'm going to take into consideration the fact that you are doing so much better now, which suggests that you can do better when you are under supervision, and that you do have a criminal history which is only in Category II.

I do think your role here was a serious one, which is why I am finding that a 63-month sentence is the correct sentence, that's sufficient. The only question in my mind is whether it is in fact sufficient. But I will go along with the government and your attorney in considering it is sufficient to achieve the purposes of sentencing under 3553(a).

I've taken into consideration the guidelines, all of the factors in 3553(a), the sentences that I've already imposed as to the codefendants *given their different roles and postures in this case*, and I find that a 63-month sentence is the correct sentence under 3553(a).

(emphasis added).

**[10]** Given the court's clear attempts to ascertain Saeteurn's individual culpability in the drug conspiracy, the court's specific examination of Saeteurn's personal history, and the court's sentence at the *bottom* of the Guidelines recommended range, we are satisfied this sentence was reasonable. *Cf. Rita*, 127 S. Ct. at 2469-70; *Marcial-Santiago*, 447 F.3d at 719 (holding that even if the district court misapplied § 3553(a)(6), the sentence was reasonable because "the court imposed sentences that are within the Guidelines ranges. The district court gave thoughtful attention to factors recognized in § 3553(a) and exercised sound discretion to ensure that the punishment fit the crime and the circumstances of the appellants.").

**AFFIRMED.**