NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 10-3078
_____

UNITED STATES OF AMERICA

v.

JULIO MOTA,
            Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 92-cr-024-4)
District Judge:  Hon. Katharine S. Hayden

_____

Submitted Under Third Circuit LAR 34.1(a)
September 15, 2011

Before:  RENDELL, JORDAN and BARRY, *Circuit Judges*.

(Filed:  September 16, 2011)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Julio Mota appeals the judgment of the United States District Court for the District of New Jersey sentencing him to 70 months' imprisonment and four years' supervised release in connection with his having pled guilty to conspiracy to distribute and to possess with intent to distribute heroin in violation 21 U.S.C. § 846. For the following reasons, we will affirm the judgment.

I.      **Background**

In November 1991, the United States Drug Enforcement Agency ("DEA") began an investigation into the organization and suppliers of a heroin dealer named Julio Pagan. In the process of the investigation, the DEA identified several persons with connections to Pagan's organization, including Mota, who had helped distribute heroin for Pagan.

On January 7, 1992, Mota and several other Pagan associates were arrested for their drug-related activities. A few days later, Mota was indicted in the District of New Jersey for conspiracy to distribute and to possess with intent to distribute more than 100 grams of heroin, in violation of 21 U.S.C. § 846, and for possession with intent to distribute approximately 50 grams of heroin, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

Mota confessed his involvement in Pagan's organization and entered into a plea agreement with the government. The parties stipulated in the plea agreement that Mota was responsible for distributing 145 grams of heroin and had accepted full responsibility for his conduct. The plea agreement contemplated that Mota would cooperate with the government, but it also provided that, "[s]hould Julio Mota withdraw from this

2

agreement, or … commit any federal, state, or local crime between the date of this agreement and his sentencing in this matter … or otherwise … violate[] any provision of this agreement, this agreement and its benefits to Julio Mota shall be null and void." (App. at 18.) In February 1992, pursuant to the plea agreement, Mota pled guilty to the conspiracy count of the indictment.

Mota was to be sentenced in May 1992, but he fled. A warrant was issued for his arrest, and, in November 2009, more than 17 years later, Mota was finally arrested in Ohio. He was subsequently returned to the District of New Jersey, where he was detained pending sentencing.

In an April 2010 presentence interview, Mota told the Probation Office that he had fled because "he felt the government wasn't helping him, and he did not believe he was getting proper consideration for his cooperation." (PSR ¶ 36.) He also said that he had been concerned for his safety because he was unable to meet the demands of his former drug associates, who had insisted that Mota reimburse them for the value of the drugs confiscated by the DEA at the time of his arrest.

In a subsequent written statement to the Probation Office, Mota elaborated on his interview comments, explaining how his positive identification of one of Pagan's associates had led to a conviction but also to death threats.[1] Mota stated that he had informed the government of his desire to further cooperate and of his fear for his own

_____

[1] At sentencing, Mota referred to having assisted in two investigations. His statement to the Probation Office appears to refer to only one, but any discrepancy in that regard is immaterial to our decision.

3

safety but that the government, despite facilitating his release on bail and later indicating that it would look into improving Mota's situation, had failed to help, which prompted Mota to flee. Mota explained that over the next 17 years he had explored options for turning himself in but had decided against it because of family considerations.[2]

The Probation Office calculated Mota's base offense level at 26 and recommended imposing a two-level enhancement for obstruction of justice based on his having fled. The Probation Office did not include in its calculations a two-level reduction for acceptance of responsibility, noting that, pursuant to U.S.S.G. § 3E1.1 cmt. n.4, conduct garnering an obstruction of justice enhancement precludes an acceptance of responsibility reduction in all but extraordinary cases and that it was up to the court to determine whether Mota's case was extraordinary. The Probation Office also did not assume in its calculations Mota's satisfying the criteria provided in U.S.S.G. § 5C1.2(a), which could result in a two-level reduction if applied (the "safety valve reduction"), assuming that the Court also applied the obstruction of justice enhancement and denied Mota acceptance of responsibility. Combining the foregoing calculations with Mota's being in criminal history category I resulted in an advisory Guidelines range of 78 to 97 months' imprisonment.

On June 30, 2010, the District Court held a sentencing hearing for Mota. At the hearing, the government conceded that the safety valve reduction, which was not available to Mota in 1992, should apply, resulting in a Guidelines range of 63 to 78

---

[2] Mota indicated in his statement that he had married and had three children during his 17 years as a fugitive.

months' imprisonment. The government noted, however, that the application of the two-level safety valve reduction negated the two-level enhancement for obstruction of justice, effectively leaving Mota unpunished under the Guidelines for having fled. The government also argued that Mota's case was not sufficiently extraordinary to justify finding acceptance of responsibility despite obstruction of justice, reasoning that Mota's cooperation was modest and that he fled without giving the government an opportunity to address his safety and other concerns.

Mota countered by recounting the substance of his earlier-submitted statement, arguing that his confession and cooperation clearly indicated that he had accepted responsibility and that his flight from sentencing was in response to being under duress from death threats, which meant that he lacked the necessary mental state for the obstruction of justice enhancement. Mota argued further that, even if his flight did obstruct justice, it did not, under the extraordinary circumstances of his case, preclude his having accepted responsibility. Finally, Mota argued that a downward variance was warranted under 18 U.S.C. § 3553(a) based on, among other things, his not having committed another offense during his time as a fugitive and his co-defendant having received 60 months' imprisonment after also fleeing.

The government did not dispute Mota's version of events. It pointed out, however, that Mota's cooperation had not, at the time it was offered, been deemed significant enough to warrant a downward departure motion. The government also noted that the discrepancy in sentences with his co-defendant was justified based on his co-defendant's offense having involved a lesser quantity of drugs. Finally, the government

5

intimated that, because the presently-calculated Guidelines range of 63 to 78 months was only slightly higher than the Guidelines range of 60 to 63 months to which Mota would have been subject had he not fled, the Court could not vary downward without effectively rewarding Mota for becoming a fugitive.

Considering the foregoing, the Court sentenced Mota to 70 months' imprisonment and four years' supervised release. In justifying its sentence, which reflected findings that Mota had obstructed justice and not accepted responsibility, the Court explained that, while Mota was not a danger to the public, a term of imprisonment in the middle of the Guidelines range was appropriate to the seriousness of the crime and necessary and sufficient to deter drug dealing and flight.

Mota filed a timely notice of appeal.

III.    **Discussion**[3]

Mota raises three issues on appeal: whether the District Court erred in not holding an evidentiary hearing on the issue of Mota's cooperation; whether the District Court erred in finding that Mota had obstructed justice and failed to accept responsibility; and whether the sentence was otherwise procedurally and substantively reasonable.[4] We address those in turn.

---

[3] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 18 U.S.C. § 3742.

[4] We recognize that Mota's arguments with respect to obstruction of justice and acceptance of responsibility can be viewed as challenges to the procedural reasonableness of the sentence and could be addressed here as part of a general discussion of procedural reasonableness. Nevertheless, because Mota gives special attention to those arguments, separate and apart from his other procedural reasonableness arguments, we do likewise.

A.      *Lack of an Evidentiary Hearing*

Mota argues that the District Court erred in not holding an evidentiary hearing on the issue of his cooperation. We review for abuse of discretion a district court's decision to hold (or not to hold) an evidentiary hearing at sentencing. *United States v. Houston*, 217 F.3d 1204, 1206-07 (9th Cir. 2000); *cf. United States v. Styer*, 573 F.3d 151, 153-54 (3d Cir. 2009) (observing that the decision whether to hold an evidentiary hearing in connection with a motion for reduction of sentence was committed to the trial court's discretion and reviewed for abuse thereof). Where a party does not put a material fact in dispute, it is within a court's discretion to decline to hold an evidentiary hearing. *Cf. United States v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010) (noting in the suppression of evidence context that, where the defendant's motion "did not state a claim, raise a material fact, or dispute the government's version of events … the District Court acted within its discretion in denying an evidentiary hearing").

Here, Mota's counsel suggested to the Court during sentencing that, "if there's a dispute [regarding whether Mota cooperated,] then perhaps we should [hold] a hearing on it." (App. at 41.) Assuming that was a proper request for an evidentiary hearing, the record nevertheless makes clear that there was no dispute regarding the fact of Mota's cooperation. The only dispute was over the significance of that cooperation, which the Court could reasonably evaluate without holding a hearing. Accordingly, the District Court did not abuse its discretion in declining to hold an evidentiary hearing.

## B.    *Obstruction of Justice and Acceptance of Responsibility*

Mota argues that the District Court clearly erred in finding that he had obstructed justice and failed to accept responsibility. We review for clear error decisions to apply or not apply adjustments that are based essentially in fact. *United States v. Bierley*, 922 F.2d 1061, 1064 (3d Cir. 1990). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing body on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc) (citation, quotation marks, and alterations omitted). Conversely, a finding is not clearly erroneous if it is "plausible in light of the record viewed in its entirety." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985).

### i.    *Obstruction of Justice*

The Sentencing Guidelines provide for a two-level increase "[i]f (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense." U.S.S.G. § 3C1.1. Among other things, the Guidelines list "escaping or attempting to escape from custody before trial or sentencing" as an example of obstructing justice under U.S.S.G § 3C1.1. *Id.* at cmt. n.4(E).

Here, it is admitted that Mota fled instead of facing his sentencing. He claims he fled because of death threats, but, to show that those threats constituted duress, he must

8

show, among other things, that he had "no reasonable opportunity to escape the threatened harm." *United States v. Miller*, 59 F.3d 417, 422 (3d Cir. 1995) (citation and quotation marks omitted). The record does not support that conclusion, as Mota had successfully petitioned the government for help before and could have reasonably expected that it would respond to his safety concerns. Therefore, the District Court's conclusion that Mota willfully obstructed justice when he fled was more than plausible in light of the record and not clearly erroneous.

### ii. Acceptance of Responsibility

To receive a two-level reduction for acceptance of responsibility, a defendant must "clearly demonstrate[]" that acceptance. U.S.S.G. § 3E1.1(a). Even if a defendant pleads guilty and truthfully admits his unlawful conduct, he may still be found to have not accepted responsibility due to conduct that outweighs and is inconsistent with his admissions and plea. *Id.* at cmt. n.3. Obstructing justice is inconsistent with accepting responsibility and precludes such a finding except in "extraordinary cases." *Id.* at cmt. n.4.

Here, the District Court found that Mota's case was not extraordinary, describing Mota as having "just … plain [fled]." (App. at 46.) We agree. Whether or not Mota's personal story is unusual, the circumstances surrounding his flight were not. Accordingly, the District Court did not clearly err in finding that he had not accepted responsibility for his conduct.

9

C.    *Procedural and Substantive Reasonableness of the Sentence*

Finally, Mota argues generally that his sentence was procedurally and substantively unreasonable. We review sentences for abuse of discretion, looking at procedural and substantive reasonableness. *United States v. Wise*, 515 F.3d 207, 217-18 (3d Cir. 2008). A sentence is procedurally reasonable as long as it was not the product of "significant procedural error …, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Id.* at 217 (internal quotation marks omitted). A sentence is substantively reasonable "[a]s long as [it] falls within the broad range of possible sentences that can be considered reasonable in light of the § 3553(a) factors." *Id.* at 218.

Here, the District Court imposed a sentence in the middle of the Guidelines range, based, as it explained, on the seriousness of Mota's crime and the need to deter both the underlying drug offense and flight from law enforcement. The Court's explanation evinces appropriate consideration of the § 3553(a) factors, and nothing in the record supports Mota's contention that the Court treated the Guidelines as mandatory. Nor does the record support Mota's contention that the Court failed to consider sentencing disparities among co-defendants. The Court did not need to discuss and make findings as to each of the § 3553(a) factors, as long as the record reveals that those factors were meaningfully considered. *United States v. Young*, 634 F.3d 233, 243 (3d Cir. 2011). Here, the record is certainly sufficient. It shows appropriate attention to the § 3553(a)

10

factors, including that sentencing disparities were addressed during the hearing. In short, the sentence was procedurally reasonable. The sentence was also substantively reasonable, as it fell within the broad range of possible sentences that could be considered reasonable in light of the § 3553(a) factors. Accordingly, we conclude that the District Court did not abuse its discretion in sentencing Mota.

## III. Conclusion

For the foregoing reasons, we will affirm the District Court.